

**PELTON GRAHAM LLC**

111 Broadway, Suite 1503, New York, New York 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ www.PeltonGraham.com

**Brent E. Pelton, Esq.**                                                    October 8, 2018
Pelton@PeltonGraham.com


**VIA ECF**

Honorable Dora Lizette Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>       Re:    ***Muhammad, et al. v. GRA Convenient Inc., et al.***
>              **Civil Action No. 17 Civ. 00478 (DLI)(RER)**

Dear Judge Irizarry:

This office represents plaintiffs Aslam Muhammad ("A. Muhammad") and Imran Muhammad ("I. Muhammad" and, together with A. Muhammad, the "Plaintiffs") with regard to their claims against Defendants GRA Convenient Inc., GRA Convenient 1 Inc., GRA Convenient II Inc., GRA Convenient III Inc., John Doe Corp. (representing the corporate entity doing business as "One and 1 The Ultimate Convenience," which operates a convenience store located at 754 Coney Island Avenue, Brooklyn, New York 11218) and Adnan Saeed (collectively, the "Defendants"), in the above-referenced matter. This letter is submitted jointly with Michael L. Previto, Esq., counsel for Defendants, pursuant to the pursuant to the Fair Labor Standards Act ("FLSA"), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and Your Honor's September 28, 2018 Order. Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A)[1] constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.        Introduction and Procedural History**

Named plaintiffs A. Muhammad and I. Muhammad commenced this action by filing a Class and Collective Action Complaint on behalf of themselves and all similarly situated employees of Defendants on January 27, 2017, asserting claims for unpaid minimum wages and

---

[1] The parties have fully executed the Settlement Agreement; Plaintiffs will file the Settlement Agreement with the fully executed Confession of Judgment as soon as it is received.

overtime premiums under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and for unpaid spread-of-hours premiums and violations of the wage notice and wage statement requirements of the NYLL and supporting regulations. (*See generally* Dkt. No. 1). Plaintiffs allege that they are former convenience store employees who worked in various stores owned and operated by Defendants. Defendants filed their Answer on March 28, 2018, denying all materials allegations and asserting certain counterclaims against Plaintiffs (Dkt. No. 10). Specifically, Defendants alleged that Plaintiffs were never full-time employees of Defendants, failed to comply with Defendants' requests for certain information necessary for reporting their income to the IRS and were not legally permitted or authorized to work in the United States. *Id.* Defendants additionally alleged in their second counterclaim that Plaintiff I. Muhammad is disabled and never had a job in Defendants' stores. *Id.* Plaintiffs subsequently filed a motion to dismiss Defendants' counterclaims for failure to state a claim on March 28, 2017. (Dkt. Nos. 12-13). On April 26, 2018, Defendants filed their Amended Answer in which they removed all counterclaims against Plaintiffs. (Dkt. No. 14). Plaintiffs informed the Court of their intention to withdraw their unopposed motion to dismiss on January 24, 2018. (Dkt. No. 26).

On April 27, 2017, the parties appeared for an initial conference before Judge Reyes, wherein the parties discussed a discovery schedule. Plaintiffs and Defendants subsequently exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on May 16, 2018 and May 18, 2018, respectively. With their initial disclosures, Plaintiffs produced a damages analysis based on their best estimates of the hours that they worked and the wages they were paid, as well as a police report and protective order relating to a robbery that took place at one of Defendants' stores while Plaintiff I. Muhammad was allegedly working there. Defendants served their first and second set of interrogatories and requests for documents upon Plaintiffs on May 13, 2018 and October 8, 2017, respectively. Plaintiffs served interrogatories, requests for documents and requests for admissions upon Defendants on June 19, 2017. Over the course of discovery, Defendants produced a number of tax documents, including IRS Forms 940, 941 and 1099 and tax returns, for the Corporate Defendants, notebook pages that appeared to show daily sums spent on various products for Defendants' stores, a photograph of posters regarding wage and hour law posted on a bulletin board at one of Defendants' stores, certain documents relating to the incorporation of the Corporate Defendants and letters from two (2) employees of Defendants contesting certain of Plaintiffs' allegations. During discovery, there were no records produced showing the hours that Plaintiffs worked for Defendants or the wages they were paid.

On September 7, 2017, the parties participated in a full-day settlement conference before Judge Reyes, which ultimately did not result in a settlement. The parties subsequently took depositions of Defendant Saeed and Abdul Tabusam, a non-party witness for Defendants, and both named Plaintiffs on November 14, 2017 and November 27, 2017 respectively. On January 3, 2018, the parties attended a status conference before Judge Reyes during which they confirmed the completion of discovery and the parties' readiness for trial. On January 19, 2018, Plaintiffs filed a letter to Your Honor informing the Court that upon further consideration subsequent to the parties' conference with Judge Reyes, they did not intend to seek permission to file a motion for summary judgment. (Dkt. No. 25). On March 2, 2018, the parties jointly filed their Proposed Pretrial Order. (Dkt. No. 27). Over the course of the next several months, the parties actively engaged in settlement discussions on behalf of the two (2) named plaintiffs

regarding Defendants' financial status and ability to pay a settlement. On September 13, 2018, the parties filed a letter informing Your Honor that they had reached a settlement in principle. (Dkt. No. 28).

## II.    The Settlement Accounts for Litigation Risk

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Fundamentally, the parties disagree on the number of hours that Plaintiffs worked and whether Plaintiff I. Muhammad was an employee of Defendants under the FLSA and NYLL. Plaintiffs allege that they worked at four (4) of Defendants' stores, located at 6501 Bay Parkway, Brooklyn, New York 11204 (the "Bay Parkway Location"), 2950 Avenue U, Brooklyn, New York 11229 (the "Avenue U Location"), 6520 18th Avenue, Brooklyn, New York 11204 (the "18th Avenue Location") and 7626 5th Avenue, Brooklyn, NY 11209 (the 5th Avenue Location). Specifically, Plaintiffs allege that they typically worked twelve (12) hour shifts seven (7) days per week, for a total of approximately eighty-four (84) hours per week. For their work, Plaintiffs allege that they received a flat salary of between four hundred and fifty dollars ($450.00) and four hundred and seventy-five dollars ($475.00) per week, entirely in cash, which failed to compensate them at a rate not less than the statutory minimum wage for all hours worked and did not provide overtime premiums for hours worked over forty (40) hours in a given workweek. Plaintiffs further allege that they were not paid spread-of-hours premiums when they worked shifts in excess of ten (10) hours per day and did not receive a paystub or wage statement with their cash payments showing the hours that they worked or their hourly or overtime rates. Finally, Plaintiffs alleged that they did not receive a wage notice when hired or annually.

Defendants vigorously deny Plaintiffs' allegations, including their claims for unpaid minimum wages and overtime premiums and allege that Plaintiff A. Muhammad never worked a shift lasting longer than eight (8) hours. Further, while Plaintiff I. Muhammad alleges that he was employed by Defendants from in or around February 2012 through September 2015, for a total of approximately three and a half years, at the Bay Parkway, 5th Avenue and 18th Avenue locations, Defendants maintain that I. Muhammad was never an employee of any Defendant. Indeed, Defendants' document production included two (2) letters from GRA employees stating that Plaintiff A. Muhammad was a part-time employee who typically worked a maximum of five to six (5-6) hours per day and that while Plaintiff I. Muhammad would often "hang around with his father and 'help out'" or occasionally take A. Muhammad's place when he was unable to work due to a medical condition, he was never permitted to work in any of Defendants' stores. Defendants additionally allege that the Plaintiffs lack jurisdiction in that no defendant, jointly or collectively, ever generated over five hundred thousand dollars ($500,000.00) annually during the relevant time period. Lastly, Defendants allege that Plaintiff A. Muhammad never supplied Defendants with the necessary documentation to allow for the issuance of wage statements.

Because Defendants failed to produce records of hours worked and wages paid, if the matter proceeded to trial, Plaintiffs would be able to rely on their testimony as to the extent of their work as a matter of just and reasonable inference. While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that the lack of documents

demonstrating the hours worked could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony in its entirety.  Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after a trial. Based on these disputes, the parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiffs' FLSA claims, but also their pendant state law claims.[2]

Perhaps the biggest litigation risk, however, is Defendants' ability to pay a judgment if one were obtained by Plaintiffs. Over the course of the litigation, three (3) of the corporate defendants have gone out of business. Thus, as of the date of this submission, only the 5th Avenue Location is currently operating. Defendant Saeed has also represented that he is approximately two (2) months behind on his mortgage and thus, cannot afford to pay a settlement amount that exceeds the current terms. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

As set forth above, Plaintiffs' counsel created a damages analysis based on Plaintiffs' best estimates of the hours that they worked and the wages they were paid. For the unpaid minimum wage claim, which was calculated based on the difference between the hourly rate that Plaintiffs were paid (i.e., Plaintiffs' purported salary divided by the total number of hours worked) and the full minimum wage, Plaintiffs calculated a total of $93,081.96. For Plaintiffs' unpaid overtime claim, which was calculated by multiplying the full minimum wage rate or Plaintiffs' hourly rate, whichever was higher, by 0.5 and multiplying the resulting overtime premium by the number of hours that Plaintiffs worked in excess of forty (40) each week, Plaintiffs calculated a total of $79,512.76. Plaintiffs' calculations for spread-of-hours damages, which were calculated by multiplying the number of days each week in which each plaintiff worked a shift or split-shift in excess of ten (10) hours by the applicable minimum wage, totaled $24,988.56. Taken together, the total damages for Plaintiffs' wage claims equaled $197,583.29. When wage notice and wage statement, liquidated damages under the FLSA and NYLL and statutory interest on the NYLL claims at 9% per annum were added to Plaintiffs' "actual" damages, the total alleged damages came out to $464,611.47.

As mentioned above, Defendants have represented that they are in such a dire economic situation that they are unable to pay a substantial settlement. Defendants' ongoing and significant financial obligations made it difficult for Defendants to settle for more than they offered. The parties, thus, believe that this is a fair recovery based on the risks associated with proceeding to trial and establishing the calculated damages, as well as the certainty of receiving compensation for these claims, and the very real possibility that Defendants would be unable to satisfy a judgment for the full amount of damages, if one were obtained.

---

[2] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

## III.   Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $20,000.00 (the "Settlement Amount"). Of that amount, $7,901.49 is payable to Plaintiffs' counsel, including $1,852.25 in expenses for counsel's costs for filing and service of the complaint, conducting depositions of the Individual Defendant and a non-party witness for Defendants, and binding courtesy copies of Plaintiffs' motion to dismiss Defendants' counterclaims, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $6,049.24). The remaining $12,098.51 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds both Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiffs to make truthful statements about their experiences in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful

statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain attorneys' fees in the event that they prevail.

## IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of October 8, 2018, Plaintiffs' counsel has spent more than 78 hours in prosecuting and settling this matter, resulting in a lodestar of $22,044.58. Plaintiffs' counsel has spent $1,852.25 in actual litigation costs. The portion of the settlement amount that Plaintiffs seek as attorney's fees (i.e. $7,901.49) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is less than half of the lodestar amount and is consistent with what was agreed upon between the Named Plaintiffs and their counsel in their retainer agreements. The retainer agreements between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees.

## V.    The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks, supra*; *Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[3] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement).   In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a full-day settlement conference before Judge Reyes. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs. Rather than move forward with lengthy and costly litigation and potentially recover a judgment that would likely be impossible to collect, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Additionally, Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\*      \*      \*      \*      \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties.   The parties believe that the settlement is completely fair,

---

[3] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred.  *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

HON. DORA LIZETTE IRIZARRY
JOINT SETTLEMENT FAIRNESS LETTER
PAGE **8** OF **8**

reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: */s/ Brent E. Pelton*         By: */s/ Michael L. Previto*
Brent E. Pelton, Esq.              Michael L. Previto, Esq.
Taylor B. Graham, Esq.           535 Broad Hollow Road, Suite A-3
111 Broadway, Suite 1503        Melville, New York 11747
New York, New York 10006       Tel: (631) 773-4504
Tel.: (212) 385-9700

                                               *Attorneys for Defendants*

*Attorneys for Plaintiffs*

Enclosures